IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                                    CASE NO. 23-000134 (ESL)

OLGA M. MARTINEZ RODRIGUEZ                                CHAPTER 13

Debtor

OPINION AND ORDER

This case is before the court upon the objection to the confirmation of debtor's Amended Chapter 13 Plan dated March 2, 2023, filed by creditor FFI Holdings Puerto Rico, Inc., d/b/a La Familia Pawn ("La Familia Pawn"), alleging that the plan provides for payments in installments while the debtor keeps a vehicle securing a pawn loan, which is not property of the estate (dkt. #16).  The debtor filed an opposition (dkt. #18), a motion to inform (dkt. #21) and a memorandum of law (dkt. #29).  La Familia Pawn filed a reply (dkt. #32), and the debtor filed a sur-reply (dkt. #33).

Jurisdiction

This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a) and 28 U.S.C. § 157(a). The matter before the court is a core proceeding under 28 U.S.C. § 157(b)(2)(L). Venue is proper pursuant to 28 U.S.C. § 1408.

Position of the Parties

La Familia Pawn alleges that the pawn-law contract, Puerto Rico law, and section 108(b) of the Bankruptcy Code mandate the debtor to redeem or surrender the vehicle in question by March 25, 2023, and that upon debtor's failure to do so, La Familia Pawn becomes the owner of such vehicle.  Thus, allegedly, the debtor "cannot modify La Familia Pawn's rights by proposing to pay the debt in installments through the life of the Amended Chapter 13 Plan dated March 2, 2023, and keep the vehicle after the March 25, 2023, redemption period." La Familia Pawn references Section 14 of Act No. 23 of February 24, 2011, known as the Pawnbroking Business and Operations Regulatory Act (the "PR Pawn Shop Act"), 10 L.P.R.A. §§ 634-654, as amended,

-1-

which provides that once the maturity and thirty (30) day extension period have elapsed, the "pledged goods shall be forfeited to the licensee, unless the parties had agreed otherwise, and absolute title to the pledged goods shall be conveyed to the licensee by operation of law." 10 L.P.R.A. § 646(b).

La Familia Pawn alleges that as a titleholder, although not in physical possession of the vehicle, it is a possessor of the vehicle under Section 7825 of the Puerto Rico Civil Code, 31 L.P.R.A. § 7825 (2020)[1]. Therefore, the pledged vehicle is not property of the estate pursuant to 11 U.S.C. § 541(b)(8). La Familia Pawn contends that this court should follow the decision in In re Northington, 876 F.3d 1302 (11th Cir. 2017), and not the decisions relied on by the debtor, that is, In re Womack, 616 B.R. 420 (Bankr. M. D. Ala. 2020), and TitleMax of Alabama, Inc. v. Womack, 2021 WL 1343051 (M. D. Ala. 2021). La Familia Pawn concludes that upon the expiration of the redemption period, the property is no longer property of the estate, irrespective of whether debtor was current on the payments as of petition date.

The debtor counters by stating that, as of petition date, she was current on the loan payments, as extended, and thus, the owner in possession. At such time, none of the contractual redemption or conditional possession provisions had been triggered. The debtor was the owner of the vehicle, albeit subject to La Familia Pawn's security interest based on its lien. However, La Familia Pawn's security agreement may be modified under 11 U.S.C. § 1322(b)(2), which provides that a Chapter 13 plan may modify the rights of holders of secured claims, except claims guaranteed by a debtor's principal residence.

The debtor alleges that since the contractual redemption possession provisions had not been triggered as of petition date, the debtor brought into the estate "unfettered title, possession, and ownership of the vehicle, not just a limited right of redemption." Dkt. # 29, pp. 6-7. The debtor relies on In re Womack, 616 B.R. 420 (Bankr. M.D. Ala. 2020), *aff'd*, TitleMax of Alabama, Inc. v. Womack, 2021 WL 1343051 (M.D. Ala. 2021) (Womack II), *aff'd*, In re

---

[1] Section 7825 of the Puerto Rico Civil Code provides for the concept in which you can have possession. A person may have possession of goods in one of two concepts: (a) as an owner or (b) as a holder, to preserve or enjoy, when the dominion belongs to another person. See 31 L.P.R.A. § 7825 (2020).

-2-

Womack, 2021 WL 3856036 (11th Cir. 2021) (Womack III), which held that a Chapter 13 debtor may modify the rights of a pawn lender under Section 1322(b)(2) when there is no prepetition default on a title loan as the automatic stay operates to freeze the interests of the pawn creditor as a lienholder.

The debtor also alleges that the pawn contract lacks clarity and precision regarding the dates that trigger a debtor's rights and obligations, particularly those that provide for the forfeiture of ownership.

Facts

On October 20, 2022, Debtor executed a Pawn Agreement (the "Contract") whereby he obtained a loan in the amount of $3,000.00 from La Familia Pawn and pledged as collateral the certificate of title of her 2012 Kia Soul (the "Vehicle"), under the PR Pawn Shop Act. Under the Contract, and consistent with the PR Pawn Shop Act, the original loan amount plus accrued interest is due within 30 days.

The debtor extended the maturity date of the loan several times by making the requisite interest payments. The loan's maturity date was ultimately extended to February 18, 2023. Therefore, the debtor had a 30-day period, until March 20, 2023, to redeem the Vehicle by paying the balance in full plus accrued interest and fees.

The debtor filed a Chapter 13 petition on January 24, 2023. The parties stipulated at the initial confirmation hearing that the debtor was current on the payments under the Pawn Agreement.

Applicable Law and Discussion

The issue before this court is whether a debtor filing a Chapter 13 petition before defaulting on the PR Pawn Shop Act can modify La Familia Pawn's redemption rights under 11 U.S.C. § 1322(b)(2).

The PR Pawn Shop Act was enacted in November 2020 to impose stricter requirements for the licensing, supervision, and government oversight of the pawnshop businesses. In fact, only three sections of the act contain substantive provisions, that is, Sections 644 (interest rates

and service charges), 645 (term of the pawn loan), and 646 (redemption and sale of pledged goods). The implementing regulations drafted by the Office of the Commissioner of Financial Institutions (OCIF) only address the licensing and oversight of the pawn shop operations.

Pawn loans, as any debt, intersect in bankruptcy. The pawn loan contract terms, the chapter of the bankruptcy petition, and the timing of the bankruptcy petition filing will affect any determination of a particular controversy. There are three Bankruptcy Code sections which have critical relevance on pawn loans in bankruptcy: Section 108(b), extensions of time, when applicable nonbankruptcy law fixes a period of time within which a debtor or an individual protected by Sections 1202 or 1301 may perform an act, and such period has not expired before filing the bankruptcy petition, the period is extended to the later of the end of the period provided by the nonbankruptcy provision, or 60 days after the order for relief; Section 362(a), automatic stay provisions against any act against the debtor to recover a claim, enforcement of any judgment against property of the debtor, any act to obtain possession of property of the estate, enforce any lien against property of the estate, and others; and Section 541(b)(8), which excludes from property of the estate the following:

(8) subject to subchapter III of chapter 5, any interest of the debtor in property where the debtor pledged or sold tangible personal property (other than securities or written or printed evidence of indebtedness or title) as collateral for a loan or advance of money given by a person licensed under law to make such loans or advances, where—

(A) the tangible personal property is in the possession of the pledgee or transferee;

(B) the debtor has no obligation to repay the money, redeem the collateral, or buy back the property at a stipulated price; and

(C) neither the debtor nor the trustee have exercised any right to redeem provided under the contract or State law, in a timely manner as provided under State law and section 108(b);

-4-

11 U.S.C. § 541(b)(8). Although not specifically mentioned in Section 541(b)(8), the court finds that the same applies to pawn loan transactions between a debtor/borrower and a pawnbroker licensed under state law.  Such is the case before us.

The application of the automatic stay provisions to property of the estate and the redemption rights under a pawn loan contract are not very clear and caselaw is not consistent.  The court will apply the same in this case whilst considering that it is a chapter 13 wherein the debtor was current on the pawn loan payments, as extended, on the petition date.

Generally, a borrower is entitled to redeem property within the time in the pawn loan contract, and failure to timely redeem results in the borrower's forfeiture of any ownership interest in the collateral, which becomes the property of the pawnbroker. Honorable W. Homer Drake, Jr., Honorable Paul W. Bonapfel, Adam M. Goodman, Chapter 13 Practice & Procedure, § 14:16, Exclusion of "pawned" property from property of the estate - § 541(b)(8) (2023).

The decision on the present contested matter hinges on whether the court follows the holding in Northington or Womack. The relevant provisions of the state pawn laws of Alabama, Georgia, and Puerto Rico are similar.

The court in Northington held "that the Bankruptcy Code did not forestall the 'automatic[]' operation of Georgia's pawn statute, that the car dropped out of the bankruptcy estate (and vested in the pawnbroker) when the prescribed redemption period lapsed, and, accordingly, that with respect to the car, Section 1322(b)(2) had no field of operation. Simply put, following the expiration of the grace period, the pawnbroker didn't have a mere 'claim' on the debtor's car—it had the car itself." 876 F.3d at 1306.

The court in Womack held as follows:

In contrast with the debtor in Northington, Womack enjoyed the benefit of the automatic stay. In Northington, because the debtor transferred his vehicle to the bankruptcy estate after the period to redeem commenced running, the Bankruptcy

Code extended his redemption period "for a finite term of 60 days." 876 F.3d at 1306, 1313 (discussing 11 U.S.C. § 108(b)). The debtor could not avail himself of the automatic stay, 11 U.S.C. § 362(a), in Northington, because "anything temporarily stayed under the specific language of section 108(b) [can]not [be] indefinitely stayed by the more general language of section 362(a)." 876 F.3d at 1313. But the statutory right to redeem in the Alabama Pawnshop Act, Ala. Code § 5-19A-6, and the extension of time under the Code, 11 U.S.C. § 108(b), never applied to Womack because her vehicle became property of the estate. As a result, Womack's bankruptcy petition "operate[d] as a stay" to prevent any action by TitleMax to "obtain possession of property of the estate," to "enforce" its pre-petition lien, or to "collect, assess, or recover" any pre-petition claim. See id. § 362(a)(3)–(5).

Unlike the debtor in Northington, Womack had an interest in her vehicle that she could modify in her Chapter 13 plan. In Northington, the debtor never invoked his right to redeem and forfeited his legal interest in the pawned vehicle. 876 F.3d at 1309–10. Because the debtor's contingent rights to title of and to possess his vehicle vested automatically in the pawnbroker, Ga. Code § 44-14-403(b)(3), the asset "dropped out of the bankruptcy estate," and no property interest existed for the debtor to modify. Northington, 876 F.3d at 1306. But the automatic stay, 11 U.S.C. § 362(a) (3)–(5), froze the interest of TitleMax as a lienholder with a secured interest in Womack's vehicle, see Ala. Code § 5-19A-10(a), for "the amount of its interest in the automobile," Thompson, 791 So. 2d at 978. And Womack, as a Chapter 13 debtor, could "modify the rights of [TitleMax, as a] holder[ ] of [a] secured claim[ ]." See 11 U.S.C. § 1322(b)(2).

In re Womack, 2021 WL 3856036, at *3.

The dichotomy of the decisions by the Eleventh Circuit in Northington and Womack was addressed by the court in In re Snyder, 635 B.R. 901 (Bank. S. D. Ala. 2022). The court in Snyder stated that "[t]his case presents the latest iteration of a recurring question: how do title pawn transactions under Georgia's pawn statute fit into the federal Bankruptcy Code? 'Georgia's 'pawn' law states that any 'pledged'—i.e., pawned—item that is not 'redeemed' within a statutory prescribed grace period 'shall be automatically forfeited to the pawnbroker by operation of [law], and any ownership interest of the pledgor ... shall be automatically extinguished in the pledged item.' " Snyder, 635 B.R. at 907-908, quoting Northington, 876 F.3d at 1305. The Snyder court

concluded that Womack was unpersuasive and opted to follow the precedent of Northington. See id.

The Snyder court agreed with the Northington court and Supreme Court precedent, that "the nature of a debtor's property interest in a particular asset ... turns on state law". Id., at 911, citing Northington, 876 F.3d at 1311, quoting Butner v. United States, 440 U.S. 48, 55 (1979). "Under the Georgia statute, specifically O.C.G.A. § 44-14-403(b), "the expiration of the redemption period is conclusive—the debtor loses title to his pawned property, which vests immediately and by operation of law in the pawnbroker." Id., at 911. And nowhere did the Bankruptcy Code clearly indicate any congressional intent to supersede Georgia law on this issue. The panel further noted that while Section 362 of the Bankruptcy Code "prevents creditors from taking steps to actively pry assets out of a debtor's estate" upon the petition date, it "does not separately prevent those assets from evaporating on their own ... pursuant to the ordinary operation of state law." Id., at 911, quoting Northington, 876 F.3d at 1313. "The Eleventh Circuit [in Northington] rejected the debtor's argument that § 541 'froze' the vehicle in the bankruptcy estate upon the commencement of the case. According to the panel, the bankruptcy estate does not remain static 'but rather can, in certain circumstances, expand or contract in accordance with the operation of underlying state-law property rules.' " Id., at 911, quoting Northington, 876 F.3d at 1314.

The Snyder court also noted a particular set of facts that are present in this case, that is,

In Womack, the debtor entered into a title pawn transaction on March 1, 2019. Womack, 2021 WL 3856036, at *1. The maturity date was March 31, 2019. Id. On March 20, 2019, 11 days before the maturity date, the debtor filed a Chapter 13 petition. Id. This is the distinction between Womack and Northington: the debtor in Womack filed her bankruptcy petition prior to the maturity date, whereas the debtor in Northington filed his petition after the maturity date but before the grace period expired.

Id., at 913.

As noted above, property interests are defined by state law and bankruptcy courts must follow the precept. See Butner v. United States, 440 U.S. 48, 55 (1979). Thus, pawn transactions are governed by state law. As stated by the Snyder court: "In this country, the practice of pledging personal property for loans dates back to early colonial times, and pawnshops have been regulated by state laws for more than a century." Snyder, 635 B.R. at 916, quoting Asakura v. City of Seattle, 265 U.S. 332, 343 (1924).

The applicable Puerto Rico statute, 10 L.P.R.A. § 646(b), states as follows:

(b) If a pawn loan is not satisfied on the maturity date thereof, taking into account any extension period agreed upon pursuant to § 645 of this title, the licensee shall hold the pledged goods for at least thirty (30) days from the maturity date of the pawn loan. Once said thirty (30) days have elapsed, pledged goods shall be forfeited to the licensee, unless the parties had agreed otherwise, and absolute title to the pledged goods shall be conveyed to the licensee by operation of law, and no further notice to the pledgor shall be necessary, and the licensee may sell the unredeemed good, and the pledger shall have no right to redeem, provided, that no investigation is in process over such good by a law enforcement agency.'

Id. (official translation).

In Snyder, the court stated that the Northington panel rejected the argument that Section 362(a) freezes an unexpired state-law redemption period, as "[r]eading the automatic-stay provision to effect an open-ended extension of a state-law redemption period" would allow the general statutory language of Section 362(a) to supersede the more specific language of § 108(b)." Snyder, 635 B.R. at 918, quoting Northington, 876 F.3d at 1313. The Snyder court also found that the Womack panel "ignored this notion of internal dynamism when it held that the automatic stay froze the vehicle in the bankruptcy estate." Snyder, 635 B.R. at 919.

When the elements of a pawn transaction are satisfied, "the pledged property in the possession of the pawnbroker is not property of the estate unless the debtor timely redeems it." Snyder, 635 B.R. at 919, quoting Honorable W. Homer Drake, Jr., Honorable Paul W. Bonapfel,

Adam M. Goodman, Chapter 13 Practice and Procedure § 14:16, p. 73 (2021 ed.). Thus, "Section 541(b)(8) reflects congressional intent for unredeemed pawned property to be excluded from the bankruptcy estate." Id. In the case of an automobile, the tangible personal property in which the pawnbroker "took a security interest was the vehicle, not the certificate of title. The title is simply the device by which a pawnbroker perfects its lien in the vehicle. […] If Congress intended to exclude from the exclusion of § 541(b)(8) title pawn transactions, it could have done so clearly." Id., at 920-921.

Conclusion

Although the Pawnbroking Business and Operations Regulatory Act was enacted to impose stricter requirements for the licensing, supervision, and government oversight of the pawnshop businesses, the substantive provisions regarding interest allowed to be charged and the consequences of failing to redeem property pledged under a pawn contract remain unaltered. These provisions regulate the automatic extinguishment of ownership rights upon failure to timely exercise redemption rights under a pawn contract. Such is the Puerto Rico law governing the ownership rights of pawned property, and this court must follow the same.

As stated, the debtor filed for bankruptcy on January 24, 2023, that is, after the loan's extended maturity period and prior to the expiration of the 30-day redemption period. This court finds that Section 362(a) does not freeze an unexpired state-law redemption period. Thus, the 30-day redemption period lapsed on March 20, 2023. Upon debtor's failure to timely redeem the pledged property, La Familia Pawn becomes the owner of the Vehicle, and the debtor cannot modify La Familia Pawn's redemption rights under 11 U.S.C. § 1322(b)(2).

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 4th day of December 2024.

Enrique S. Lamoutte
United States Bankruptcy Judge

-10-